## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ECLIPSE LIQUIDITY, INC.,    :
           :
    Plaintiff,    :   Case No. 2:20-cv-1847-BMS
           :
  vs.       :
           :
GEDEN HOLDINGS LTD.;   :
ADVANTAGE TANKERS LLC; and :
ADVANTAGE AWARD SHIPPING LLC,  :
           :
    Defendants.   :

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS

### I. PRELIMINARY STATEMENT

Defendants Geden Holdings Ltd. ("Geden Holdings"), Advantage Tankers LLC ("Advantage Tankers"), and Advantage Award Shipping LLC ("Advantage Award") (collectively "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Eclipse Liquidity, Inc.'s motion to remand and in support of Defendants' cross-motion to dismiss.

This action is within the Court's maritime jurisdiction because the action is based on the alleged guarantee of a maritime contract—a charter party for the ocean-going vessel AVOR. Plaintiff's efforts to characterize the matter as non-maritime are misplaced because Plaintiff relies on cases in which the nature of the agreement was found to be non-maritime, and Plaintiff does not even allege here that the underlying agreement in this case is non-maritime. Plaintiff's argument is further undermined because it previously sued two of the three Defendants herein under the same charter party in 2015, alleging maritime jurisdiction, and saw its claims dismissed with prejudice. Accordingly, the exercise of maritime jurisdiction over this case is appropriate, and the motion to remand should be denied.

Turing to Defendants' cross-motion, Plaintiff's complaint should be dismissed for lack of personal jurisdiction and for failure to state a claim. Plaintiff has not alleged specific personal jurisdiction over Defendants in Pennsylvania, and Supreme Court precedent establishes that general personal jurisdiction over a foreign corporation can only exist if that corporation is "at home" in the forum state; a standard that Plaintiff falls woefully short of meeting. To the extent Plaintiff may be relying on the mere fact of a business registration, there is also no general personal jurisdiction by consent because Pennsylvania's statutory scheme requiring consent to general jurisdiction for foreign business registration does not comport with the Supreme Court's decision in *Daimler AG v. Bauman* and its progeny.

Even if there were personal jurisdiction, Plaintiff's first and second causes of action—purported corporate alter ego claims—fail because they were already dismissed with prejudice in 2015. Plaintiff's third cause of action, a purported fraudulent transfer claim under PUFTA, is plainly time barred because the applicable statute of limitations is four years from the time of the allegedly fraudulent transfer, or one year from discovery of the alleged fraud, and Plaintiff was aware of the transfer at issue here no later than mid-2015.

Plaintiff's motion to remand should be denied, and this action should be dismissed either for lack of personal jurisdiction or for failure to state a claim.

## II.    FACTS

On March 6, 2020, Plaintiff filed this action in the Philadelphia Court of Common Pleas under Case No. 200300816. *See* ECF No. 1-1 (Complaint attached hereto as Ex. A). On April 9, 2020, Defendants removed the action to this Court. *See* ECF No. 1. Defendants answered the Complaint on April 16, 2020, preserving all defenses. *See* ECF No. 3. On May 8, 2020, Plaintiff filed a motion to remand. ECF No. 9.

With respect to jurisdiction, the Complaint alleges that Defendant Geden Holdings is a Maltese entity (Ex. A ¶ 1) and that Defendant Advantage Award is a Bahamian entity. *Id.* ¶ 2. The Complaint further alleges that Defendant Advantage Tankers is "organized under the laws of the Republic of the Marshall Islands with its principal place of business in Istanbul, Turkey." *Id.* ¶ 5. Plaintiff's basis for personal jurisdiction is the alleged registration of Defendants Geden Holdings and Advantage Award as foreign corporations with the State of Pennsylvania. Ex. A ¶¶ 2-3. The Complaint does not allege any other presence or jurisdictional contact by any Defendant with Pennsylvania.

The Complaint seeks to enforce a judgment obtained against Defendant Geden under a May 27, 2010 guarantee of what Plaintiff calls "an obligation of one of its subsidiaries to purchase a vessel from Plaintiff – the Motor Tanker AVOR." Ex. A ¶ 11. The Complaint artfully avoids the term "charter," instead alleging that the underlying agreement is merely a "contract." *Id.* ¶ 15. However, the guarantee annexed as Exhibit 3 to the Complaint states that it is in consideration of "a Bareboat Charterparty . . . dated 27 May 2010." *Id.* Compl. Ex. 3, p. 1. Fortunately, the Court can consider the underlying contract, which is in fact a charter party over which the Court has maritime jurisdiction, because Plaintiff has already made the same allegations in a case dismissed with prejudice years ago in Texas.

Invoking the maritime jurisdiction[1] of the United States District Court for the Southern District of Texas, on June 10, 2015, Plaintiff filed a complaint ("Plaintiff's 2015 Maritime Complaint") with nearly identical allegations in a case captioned Eclipse Liquidity, Inc. v. Avor Navigation, Ltd., et al., 4:15-cv-01645 (the "2015 Maritime Action"). A true and correct copy of

---

[1] Notably, when Plaintiff found the Texas District Court's maritime jurisdiction convenient, it argued that the same veil piercing claims it brings here <u>were</u> subject to the court's admiralty and maritime jurisdiction. *Compare* Exhibit A at ¶ 11, *with* Exhibit B at ¶¶ 1, 3, 48.

Plaintiff's 2015 Maritime Complaint is attached as Exhibit B.   Plaintiff's 2015 Maritime Complaint alleges maritime jurisdiction over "the breach of a maritime contract i.e. an executed bareboat charter party of the employment of a seagoing cargo vessel and a principal obligor's performance guarantee." Ex. B ¶ 1. Plaintiff's 2015 Maritime Complaint sought relief under the same May 27, 2010 bareboat charter party that is the underlying contract in this action and attached that charter as Exhibit 1 to the complaint (a true and correct copy of the charter, as filed by Plaintiff in Texas, is attached as Exhibit. D).  *See* Ex. B ¶ 10 and Ex. A.  Plaintiff made nearly identical allegations to argue that the corporate veil of Geden should be pierced and property attached belonging to Advantage Tankers and a different subsidiary, Advantage Arrow Shipping, LLC. Ex. B, ¶¶ 18-41.

By Final Judgment dated November 23, 2016, the U.S. District Court for the Southern District of Texas "ORDERED AND ADJUDGED that Plaintiffs Eclipse Liquidity, Inc., Psara Energy, Ltd., and Tank Punk, Inc. shall take nothing on their claims in these three consolidated cases and Plaintiff's claims are DISMISSED with prejudice" (the "Final Judgment").  A true and correct copy of the judgment is attached as Ex. D.  The Final Judgment was not appealed, rescinded or otherwise invalidated.

### III.   PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED

#### A.  This Court has Maritime Jurisdiction Because the Underlying Agreement is a Maritime Contract.

This Court has original jurisdiction of any maritime case. 28 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.").  This case is within the maritime jurisdiction because the underlying contract is a quintessential maritime contract: the bareboat charter of an oceangoing vessel.  The

mere fact that the bareboat charter included a purchase option does not divest the Court of jurisdiction. Other courts examining bareboat charters with purchase options have found that such charters are maritime contracts notwithstanding the presence of a purchase option.  For example, in *Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54, 55–56, 61 (5th Cir. 1970), the court held that three bareboat charters containing lease-purchase provisions for a period of sixty months with options to purchase during the charter period were subject to the court's admiralty jurisdiction.

In *WTA Marine, L.L.C. v. Antin-Quealy, Inc.*, No. 98-2842, 1998 U.S. Dist. LEXIS 19273, at *1–2, 7 (E.D. La. Dec. 4, 1998), the parties had entered into a bareboat charter for a period of sixty months with an option to purchase.  Defendant brought a motion to dismiss claiming lack of subject matter jurisdiction, and the court cited with approval the line of cases, including *Tug Peggy*, holding that "a district court may have jurisdiction to determine rights of lease-purchase contracts" and "questioned the validity of the 'broad and mechanical formulation' used by numerous courts that inevitably treat most lease-purchase agreements as non-maritime."  *Id.* at *2–3.

More to the point, in *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 24 (2004), the Supreme Court provided a more holistic test to assess whether a contract is maritime, stating that the answer depends on "'the nature and character of the contract,'" and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" (citations omitted).  The Supreme Court found the bills of lading at issue in that case to be maritime contracts "because their primary objective is to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States" even though the final leg of the journey called for performance on land via rail and the loss at issue was caused by a train derailment and had nothing to do with the actual ocean carriage.  *Id.* at 24.  Recent decisions examining jurisdiction in the context of a bareboat charter have been consistent with *Kirby* in looking to the overall nature of

the agreement to determine whether or not it is maritime, not merely plucking one element out of the whole agreement.

In this case, the charter at issue is a bareboat charter in the usual form with an owner's option to sell. By its terms, the charter party's primary objective was the letting and hiring of the vessel (see Exhibit C, clause 2)— a classic maritime contract. If the sole object of the charter had been purely financing, as it was in the cases cited by Plaintiff but which is not alleged here, then the charter might arguably have been non-maritime. *See Castleton Commodities Shipping Co. Pte v. HSL Shipping & Logistics NA, Inc.*, No. 16-6619 Section "L" (3), 2016 U.S. Dist. LEXIS 110657, at *13–18 (E.D. La. Aug. 19, 2016) (where option not exercised after three years of seven year charter party became an obligation to purchase, court noted that "the compelled purchase does suggest that the Charters are not true maritime charter parties" and assessed other factors including who bore the risk, the significant authority defendant had over the vessels during construction, and the emphasis on sale and purchase objectives of the parties to find no maritime jurisdiction); *Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 913, 916–17 (S.D. Tex. 2013) (finding no admiralty jurisdiction because, in part, "the 'true objective' of the parties was the payment of a loan and the eventual sale of the [vessel] to [defendant].") The *Icon Amazing* decision, which coincidentally involved a common defendant,[2] rested on a series of factual findings that the bareboat charter in that case was simply a financing arrangement commencing with the construction of a ship, that the "charter" payments were actually installment payments on

---

[2]    Plaintiff's estoppel argument is entirely misplaced. The charter at issue in the *Icon Amazing* case was found after fact discovery to be a financing. Here, there is not even an allegation that the underlying charter is anything but a charter for the use of a ship. In any event, Defendants are not taking "irreconcilably inconsistent positions" or adopting positions "in bad faith." *See Coast Auto. Group, Ltd. v. VW Credit, Inc.*, 34 Fed. App'x 818, 823 (3d Cir. 2002) (setting forth requirements for a showing of judicial estoppel) (citation and quotation marks omitted).

a purchase/loan price, and that the complaint contained a claim for not only unpaid charter but approximately $2 million in additional security. *Id.* at 917. None of those facts, or facts analogous to them, are alleged here. Moreover, a plain reading of the underlying charter in this case shows it to be a quintessential bareboat charter for the use of a vessel, not merely a financing device as was the case in *Castleton* or *Icon Amazing*. See Ex. C.

Under *Norfolk Southern*, the nature and character of the entire bareboat charter must be considered, not simply the particular aspect of the charter party as to which Plaintiff happens to be suing. Unlike *Castleton* and *Icon Amazing*, where the courts found the contracts to principally be for construction and sale, or payment of a loan and sale, respectively, the May 27, 2010 bareboat charter in this case has all the hallmarks of a traditional bareboat charter.

Because the underlying contract is maritime, the performance guarantee by Geden is likewise maritime. *See C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, No. 07 Civ. 893 (LAP), 2008 U.S. Dist. LEXIS 48688, at *5–6 (noting Second Circuit courts have held an agreement to act as a surety on a maritime contract is non-maritime, but "the same is not true of an agreement to guarantee the performance of a maritime contract"). As in *Tug Peggy* and *WTA Marine*, this Court has maritime jurisdiction over the entire bareboat charter party including the guarantee.

## B. Removal was Proper Because this Action is Within the Court's Original Jurisdiction, and No Statute Expressly Bars Removal.

Any case within the original jurisdiction of the federal courts can be removed unless "otherwise expressly provided by Act of Congress." 28 U.S.C. § 1441(a). As set forth above, this case is within the maritime jurisdiction conferred by 28 U.S.C. § 1333(1). Plaintiff has not identified any express statutory prohibition against removing a case that is within the Court's

maritime jurisdiction, because no such prohibition exists. This case was therefore properly removed.

Plaintiff's argument to the contrary is based almost entirely on *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 390 (3d Cir. 2002), which Plaintiff depicts as having imposed a categorical bar against removal absent some basis of federal jurisdiction apart from maritime jurisdiction. But *U.S. Express* did no such thing. The case simply observed that under the version of § 1441(a) in effect at the time, removal without regard to diversity of citizenship was available only in federal-question cases. That was the natural result of the Supreme Court's holding in *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 368 (1959), that maritime cases are not federal-question cases since they do not "arise under" the Constitution or laws of the United States. But nothing in *U.S. Express* suggests that the same result should obtain under § 1441(a) as it exists today.

By its terms, the current version of § 1441(a) allows a defendant to remove "any civil action" within the federal courts' original jurisdiction unless "otherwise expressly provided by Act of Congress." Congress has expressly identified the types of cases, codified in 28 U.S.C. § 1445, that may not be removed. Among those are cases against the employers of injured railroad workers and (by incorporation) Jones Act seamen. *See* 28 U.S.C. § 1445(a); 46 U.S.C. § 30104 (making procedures in railroad-worker cases applicable to seamen's Jones Act cases). But except for that particular category of maritime cases—namely seamen's suits against their employers—there is no statutory bar against removing a maritime case.

The notion that a maritime case is non-removable absent diversity jurisdiction or federal-question jurisdiction originates from an earlier version of the removal statute, which placed an important condition on removal that has since been eliminated. Up until 2011, when Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act, Pub. L. No. 112-63, 125 Stat.

759, the first sentence of § 1441(b) stated that an action within the federal courts' original jurisdiction was removable without regard to the parties' citizenship if the action "ar[ose] under the Constitution, treaties or laws of the United States." The second sentence of the then-existing § 1441(b) stated that all *other* actions within the federal courts' original jurisdiction (i.e., actions where original jurisdiction was based on something other than a claim "arising under the Constitution, treaties or laws of the United States") were removable only if none of the defendants was a citizen of the state where the action was brought. Given the Supreme Court's ruling in *Romero* that maritime cases do not "arise under" the Constitution or laws of the United States, courts applying the pre-2011 version of § 1441(b) quite naturally concluded that a maritime case was not removable unless the case also satisfied diversity jurisdiction and no defendant was a citizen of the forum state. *See, e.g.*, *In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991); *see generally Lu Junhong v. Boeing Co.*, 792 F.3d 805, 817 (7th Cir. 2015) (explaining the basis of pre-2011 decisions that precluded removal of maritime cases).

But with the passage of the Clarification Act in 2011, Congress narrowed § 1441(b) so that the bar against removing cases with a forum-state defendant now applies only where diversity is the sole basis of subject-matter jurisdiction. *Lu Junhong*, 792 F.3d at 817. With this change, § 1441(b) no longer has any bearing on maritime cases. The question of removability rests entirely with § 1441(a), which in its current form affords a right to remove any case within the federal court's original jurisdiction unless Congress has expressly provided otherwise. *See Garza v. Phillips 66 Co.*, 2014 WL 1330547, at *4 (M.D. La. Apr. 1, 2014) (collecting cases).

Plaintiff does not contend that the saving-to-suitors clause in 28 U.S.C. § 1333(1) expressly precludes removal, but instead suggests that precedents applying the old version of the removal statute should continue to govern even though the statutory underpinning of those precedents no

longer exists. Yet "[t]he right of removal is entirely a creature of statute," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and the courts should not impose extra-textual limitations on removal. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553–54 (2014) (holding that a notice of removal need not be supported by any jurisdictional averments other than the one explicitly required by statute).  If Congress wished to prohibit removal of maritime cases as part of the 2011 amendments, it certainly could have done so.  Indeed, those amendments were largely based on the American Law Institute's "Federal Judicial Code Revision Project," which recognized that the proposed revisions would allow maritime cases to be removed and even suggested a provision expressly disallowing removal "solely on the basis of such admiralty and maritime jurisdiction as [28 U.S.C. § 1333(1)] permits to be exercised concurrently by State courts." *Federal Judicial Code Revision Project*, at p. 335 (ALI 2004). Yet the revisions as enacted by Congress included no such provision—a strong indication that the legislature intended no prohibition on maritime removals. *Cf. Russello v. United States*, 464 U.S. 16, 23–24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.").

Nothing in the text of § 1333(1) forbids a defendant from removing a maritime case, and the idea of an implicit bar on maritime removal cannot be squared with the removal statutes as they now stand. In any event, the saving-to-suitors clause in § 1333(1) does not guarantee a maritime plaintiff a categorical right to have its case adjudicated in state court. *Crispin Co. v. Lykes Bros. Steamship Co.*, 134 F. Supp. 704, 707 (S.D. Tex. 1955). As the Supreme Court has explained, "[i]t is not a remedy in the common-law courts which is saved, but a common-law remedy." *The Moses Taylor*, 71 U.S. 411, 431 (1867). Indeed, the Court's reasoning in *Romero* confirms that the saving-to-suitors clause imposes no bar on removal. One of the reasons the *Romero* majority gave

for not treating a maritime case as a federal-question case was that doing so would have made a maritime case freely removable under the old version of 28 U.S.C. § 1441(a). *See* 358 U.S. at 371-72. But if the saving-to-suitors clause itself precluded removal of maritime cases, then the question *Romero* decided—whether such cases also "ar[ose] under the Constitution, treaties or laws of the United States"—would have had no bearing on removability because the saving-to-suitors would have barred removal in any event. Properly read, the saving-to-suitors clause simply allows a maritime plaintiff to file an *in personam* suit in state court in the first instance—a choice to which a defendant might or might not accede. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001) ("The prospect that a vessel owner may remove a state court action to federal court, however, does not limit a claimant's forum choice under the saving to suitors clause any more than other litigants' forum choices may be limited."). In short, § 1333(1) does not strip a defendant of the removal right granted by § 1441(a) and is no bar to removal here.

### IV.    DEFENDANTS' CROSS-MOTION TO DISMISS SHOULD BE GRANTED

#### A. Standard for F.R.C.P. 12 Motion to Dismiss and Facts to be Considered

Plaintiff's claims should be dismissed under F.R.C.P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, under F.R.C.P. 12(b)(6) for failure to state a claim.  A motion to dismiss based on Rule 12(b)(6) may be granted based on an affirmative defense if the affirmative defense is apparent from the face of the complaint.  *Brody v. Hankin,* 145 Fed. App'x 768, 771 (3d Cir. 2005).  This includes both res judicata and statute-of-limitations defenses, as well as "any affirmative defense raised pursuant to Rule 8(c)."  *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (noting res judicata and statute of limitations can be grounds for dismissal under 12(b)(6)).  "Where preclusion is an issue, 'and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments

to, its complaint, it is axiomatic that a court must still consider the prior adjudication' in evaluating the preclusion issue." *Mahdi Sufi El v. People's Emergency Ctr.*, No. 19-690, 2020 U.S. Dist. LEXIS 20089, at *10 (E.D. Pa. Feb. 6, 2020) (noting claim preclusion may be raised on a 12(b)(6) motion to dismiss) (quoting *M & M Stone Co. v. Pennsylvania*, 388 Fed. App'x 156, 162 (3d Cir. 2010)).

At this stage of the case, under the standard for a motion to dismiss on Rule 12(b)(2) and Rule 12(b)(6) grounds, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation and quotation marks omitted). However, a court is not limited to the pleadings, because such a motion "inherently requires the resolution of factual matters outside the pleadings. . . . Courts must look beyond the pleadings when ruling on a motion brought under Rule 12(b)(2)." *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 681 (E.D. Pa. 2009); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004). Accordingly, the Court can consider certain matters outside the pleadings.

The Court should consider the 2015 Maritime Action and resulting Final Judgment (attached as Exhibit D) in addition to the Complaint. A prior judicial opinion is a public record of which a court may take judicial notice at the motion to dismiss stage. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). The Third Circuit has established that "a court may take judicial notice of another court's opinion to use it as proof that evidence existed to put a party on notice of the facts underlying a claim." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). In this case, the complaint filed in the 2015 Maritime Action and the Final Judgment are public records and are relevant because they show that Plaintiff's first and second causes of action were previously dismissed with prejudice and that Plaintiff's PUFTA claim is time barred.

**B. Plaintiff's Complaint Should Be Dismissed for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2).**

The Complaint should be dismissed for lack of personal jurisdiction as to all Defendants. Plaintiff alleges personal jurisdiction based solely on the alleged registration of Geden Holdings and Advantage Award as foreign corporations with the Pennsylvania Secretary of State. Ex. A ¶ 2-3. Plaintiff further alleges that its alter ego allegations mean that Advantage Tankers is also subject to personal jurisdiction in Pennsylvania. *Id.* ¶ 7.

A court reviewing a motion to dismiss premised on FRCP 12(b)(2) "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. But "[t]he burden of demonstrating facts that establish personal jurisdiction falls on the plaintiff," and once a jurisdictional defense has been raised by defendant, "plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state," and Pennsylvania's long-arm statute allows for jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States." *Gary v. FTC*, 526 Fed. App'x 146, 149 (3d Cir. 2013) (citations and quotation marks omitted). Therefore, the exercise of personal jurisdiction is limited only by due process, which requires a nonresident defendant have "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 149–50 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The U.S. Supreme Court "has identified two types of personal jurisdiction: specific and general." *Koch v. Pechota*, 744 Fed. App'x 105, 110 (3d Cir. 2018). "A court has specific jurisdiction when the suit 'arises out of or relate[s] to the defendant's contacts with the forum.'"

*Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011)). On the other hand, "a court has general jurisdiction, even if the underlying controversy did not take place in the forum state, when a defendant's 'affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). The paradigmatic locations for finding general jurisdiction over a corporation are in the states of its principal place of business and its place of incorporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear*, 564 U.S. at 924. Only in the "'exceptional case'" will general jurisdiction be found in another forum where the corporation's contacts with that forum are so continuous and systematic that they can be deemed "'at home'" there. *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). Plaintiff does not establish an exceptional case.

### 1. There is No Specific Personal Jurisdiction Over Defendants

Plaintiff advances no claim of specific jurisdiction, and even a generous reading of the Complaint finds no support for such a theory. Plaintiff has alleged no facts regarding the particular activities or contacts of any of the Defendants in Pennsylvania out of which the challenged transaction, causes of action, alleged injuries, or alleged damages arise or relate to. Plaintiff only contends in a broad and vague manner that the transaction, causes of action, and the acts and omissions of Defendants causing the alleged injuries and alleged damages "occurred in whole or in part in Philadelphia County." Exhibit A at ¶¶ 8–9. Plaintiff cannot make particularized allegations because there are none; the challenged transaction, causes of action, acts, and omissions alleged did not take place in Pennsylvania or indeed anywhere in the United States. Given the lack of relevant contacts to the forum state, and even if specific jurisdiction were alleged, which it is not, there is no specific jurisdiction over any of the Defendants in Pennsylvania.

## 2. There is No General Personal Jurisdiction Over Defendants

### a. There is No General Personal Jurisdiction Under *Daimler* and Its Progeny

Plaintiff appears to advance a claim of general jurisdiction over Defendants in Pennsylvania, broadly stating that Geden Holdings and Advantage Award "voluntarily and purposely sought and availed themselves the protection its laws provide to residents of the state." *Id.* at ¶ 4. The only alleged fact is their business registration and appointment of in-state agents for service of process. *Id.* ¶ 2-3. Plaintiff contends that Advantage Tankers is present in Pennsylvania as the corporate alter ego of Advantage Award. *Id.* at ¶¶ 6–7. This cannot sustain a claim of general jurisdiction in light of the Supreme Court's decisions in *Daimler* and its progeny. For example, in *BNSF*, the Supreme Court found no general jurisdiction over BNSF in Montana where it did not incorporate or maintain its principal place of business there even though it had "over 2,000 miles of railroad track and more than 2,000 employees in Montana." 137 S. Ct. at 1559. In that decision, the Court noted that an example of the "exceptional case" for general jurisdiction was when war had forced a defendant corporation's owner to move from the Philippines to Ohio because Ohio became "the center of the corporation's wartime activities." *Id.* at 1558 (citations and quotation marks omitted).

None of the Defendants are alleged to be, or are, incorporated or maintaining their principal place of business in Pennsylvania, and the lack of any alleged existing contacts means they are not "at home" in Pennsylvania. The facts here, where only two of the three Defendants are alleged to have registered for business and maintain a registered agent for service of process in the forum state, are far less than the contacts found insufficient in *BNSF*, and are nothing like the extreme and exceptional case of moving operations to an entirely different state. Additionally, Plaintiff makes no allegations regarding any other particular activities or contacts of any of the Defendants

15

in Pennsylvania. *See* Exhibit A at ¶¶ 8–9. This Court has previously declined to find general jurisdiction in Pennsylvania over a foreign corporation where the same or greater contacts were alleged. *See, e.g.*, *Spear v. Marriott Hotel Services, Inc.*, No. 15-6447, 2016 WL 194071, at *2–3 (E.D. Pa. Jan. 15, 2016) (granting motion to dismiss for lack of personal jurisdiction and declining to find general personal jurisdiction where plaintiff relied "solely on the fact that defendants are registered to do business and, as she says, operate within Pennsylvania"); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 431–32 (E.D. Pa. 2015) (declining to find general jurisdiction over defendant trucking company in Pennsylvania even where defendant paid taxes, employed workers, purchased supplies, traveled roads, and completed deliveries and pick-ups in Pennsylvania). Accordingly, there is no general personal jurisdiction over Defendants.

### b. There is No General Personal Jurisdiction By Consent.

To the extent argued by Plaintiff, there is no general jurisdiction by consent over any of the Defendants. The Pennsylvania business registration statute post-*Daimler* still states that registration as a foreign corporation in Pennsylvania "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such" entities. 42 Pa.C.S. § 5301(a)(2)(i). However, this statutory scheme has aptly been criticized as contrary to *Daimler* because it presents foreign corporations with "a Hobson's choice: consent to general personal jurisdiction or be denied the benefits of doing business in Pennsylvania." *Sullivan v. A. W. Chesterton, Inc. (In re Asbestos Prods. Liab. Litig. No.)*, 384 F. Supp. 3d 532, 541 (E.D. Pa. 2019).

The *Sullivan* court held that this statutory scheme does not survive *Daimler* because it "offends the Due Process Clause and is unconstitutional." *Id.* at 534; *see also BNSF Ry.*, 137 S. Ct. at 1558–59 ("The Fourteenth Amendment due process constraint described in *Daimler*, however, applies to *all* state-court assertions of general jurisdiction over nonresident defendants;

the constraint does not vary with the type of claim asserted or business enterprise sued.") (emphasis added). Additionally, the statutory scheme violates the unconstitutional conditions doctrine, and "consent" under it is not truly voluntary. "[T]he Supreme Court has recognized that the state cannot condition a benefit generally available to others in the state on the surrender of a constitutional right," and the unconstitutional conditions doctrine prevents a government-sponsored benefit from being conditioned on the surrender of a constitutional right. 384 F. Supp. 3d at 541–42. Despite the explicit nature of the consent required by the statutory scheme, "it violates the unconstitutional conditions doctrine because it conditions the benefit of doing business in the state with the surrender of constitutional due process protections." *Id.* at 542. Moreover, because of the Hobson's choice presented by the statutory scheme, the *Sullivan* court concluded that it is "functionally involuntary" and "is not true consent at all." *Id.*

The *Sullivan* court also held that prior Third Circuit precedent supporting this statutory scheme is similarly irreconcilable with *Daimler* and can no longer stand. *Id.* at 534. In *Bane v. Netlink, Inc.*, 925 F. 2d 637 (3d Cir. 1991), the Third Circuit held that an out-of-state defendant who registered to do business in Pennsylvania was deemed under the long-arm statute to have consented to personal jurisdiction. However, *Daimler* clarified that "neither maintaining continuous and substantial contacts with the forum nor notions of 'purposeful availment' were a sufficient basis for the exercise of general jurisdiction over a foreign corporation. Thus, *Daimler* effectively disassembled the legal scaffolding upon which *Bane* was based." *Sullivan*, 384 F. Supp. 3d at 543 (citation omitted). Indeed, *Daimler* made clear that general personal jurisdiction can be had only where a corporation is "at home." *Id.* at 545. Recognizing the general rule binding district courts to the decisions of their respective courts of appeals, *Sullivan* applied the exception that when a constitutional standard is replaced by newer Supreme Court law, the contrary law of

the circuit no longer governs and district courts within that circuit are no longer bound by the old standard. *Id.* at 544. *Daimler* has effectively abrogated *Bane*, and it is the *Daimler* standard that must govern. *Id.* at 545.

Moreover, the present situation is factually similar to *Sullivan* and factually distinct from *Bane*. In *Bane*, the defendant had actually done business in Pennsylvania (by employing the plaintiff who later sued for age discrimination). *Bane*, 925 F. 2d at 638. In this case, by contrast, Defendants are not alleged to have done any business in Pennsylvania. Rather, the position of Defendants in this case is the same as the defendant in *Sullivan*: "without the presence of: (1) specific jurisdiction; (2) [defendant]'s voluntary consent; (3) [defendant] being incorporated in or having its principal place of business in Pennsylvania; or (4) some other extraordinary circumstance, this Court has no personal jurisdiction over [defendant]. Therefore, the Court grants [defendant]'s motion to dismiss." 384 F. Supp. 3d at 545. Defendants respectfully urge the Court to reach the same conclusion here and dismiss the Complaint for lack of personal jurisdiction.

**C. Plaintiff's Complaint Should Be Dismissed On Grounds of Claim Preclusion.**

Plaintiff's veil-piercing allegations in the Complaint (causes of action 1 and 2) should be dismissed under F.R.C.P. 12(b)(6) because they are the same as those advanced by Plaintiff against the same defendants in the 2015 Maritime Action that was dismissed with prejudice by the Final Judgment. The Third Circuit has established three elements for a successful showing of claim preclusion, which bars a suit when there is: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citation and quotation marks omitted). Because the purpose of this doctrine is to "require a plaintiff to present all claims arising out of the same occurrence in a single suit," the analysis is not applied mechanically and it bars

18

"not only claims that were brought in a previous action, but also claims that could have been brought." *Id.* at 341–42 (citations and quotation marks omitted).

On the second factor, the Third Circuit has defined "privity" to hold that this factor is met and preclusion applies "'where there is a close or significant relationship between successive defendants.'" *Creely v. Crestview Ctr.*, No. 05-CV-2080, 2005 WL 2178920, at *2 (E.D. Pa. Sept. 7, 2005) (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)). In *Creely*, this Court found that a corporate subsidiary had a close and significant relationship with its parent such that it could successfully raise the defense of claim preclusion in a later proceeding. *Id.* at *2–3. A corporate successor by merger has also been found sufficient to satisfy privity. *Stolarick v. Keycorp*, No. 17-0593, 2017 WL 4642312, at *3 (E.D. Pa. Oct. 17, 2017).

Additionally, under the third factor, "cause of action" has no single definition and is given a broad view by Third Circuit courts; "res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims" and is focused on facts, not legal theories. *Davis*, 824 F.3d at 342 (citation and quotation marks omitted). In conducting this inquiry, Third Circuit courts look to "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). As noted above, this analysis applies to bar claims that could have been brought in the previous action, *Davis*, 824 F.3d at 342, and applies even where new claims are based on newly discovered evidence unless that evidence was fraudulently concealed or could not have been discovered with due diligence. *Stolarick*, 2017 WL 4642312, at *3.

Here, the first factor is established because Plaintiff's claims were dismissed with prejudice by the Final Judgment. The second factor is also met as to all Defendants because Geden Holdings

and Advantage Tankers were both named defendants in the 2015 Maritime Action and are named here. Advantage Award is alleged to be the wholly-owned subsidiary of Advantage Tankers and is therefore sufficiently related, on the basis of Plaintiff's own pleading, to raise preclusion.[3] Ex. A ¶ 6, 61. As *Creely* and *Stolarick* establish, close corporate relationships satisfy the meaning of "privity" and the second factor of the claim preclusion inquiry under Third Circuit law, and *Creely* specifically found that a corporate parent/subsidiary relationship was sufficient to meet this end. It therefore follows that Defendants meet the second factor.

The third factor is also met because the veil piercing allegations here are the same as those alleged in the 2015 Maritime Action. In both actions, Plaintiff alleges that Geden Holdings failed to perform its obligations pursuant to the performance guarantee of a bareboat charter party dated May 27, 2010 and that Plaintiff should be able to pierce the corporate veil of Advantage Tankers and one of its subsidiaries. *Compare* Ex. A at ¶ 11; Ex. B at ¶¶ 10–11. Both complaints contend that certain vessels were sold to ringfence and insulate them from the reach of creditors, including Plaintiff (which is denied). *Compare* Ex. A at ¶ 77; Ex. B at ¶¶ 30, 39. In both actions, Plaintiff alleges that the transfer was an abuse of the corporate form and justifies piercing the corporate veil. *Compare* Ex. A at ¶¶ 60–71; Ex. B at ¶¶ 38, 41, 46. In addition to the same alleged acts and materials facts, Plaintiff relies on many of the same documents in both cases, including the bareboat charter party and diagrams of Defendants' and affiliated entities' organizational structures. *Compare* Ex. A and Ex. B. The third factor is thus met because the allegations in the two cases are the same.

---

[3]    In the 2015 Maritime Action, Plaintiff merely leveled the same allegations against a different Advantage Tanker subsidiary, Advantage Arrow Shipping, LLC.

Plaintiff's veil piercing claims should be dismissed under F.R.C.P. 12(b)(6) on claim preclusion grounds. The 2015 Maritime Action alleges the exact same facts and corporate veil piercing theory as the instant case, was filed against essentially the same entities, and was dismissed with prejudice. Plaintiff should not be allowed to now resurrect its veil piercing allegations following the Final Judgment. Plaintiff's first and second causes of action seeking to pierce the corporate veil should be dismissed with prejudice again.

### D. Plaintiff's Fraudulent Transfer Claim Under PUFTA is Barred by the Statute of Limitations

Plaintiff's third and final alleged cause of action is the plainly time-barred PUFTA claim. Ex. A ¶ 80. PUFTA requires that a cause of action for fraudulent transfer be brought within four years after the transfer was made or within one year after the transfer was or reasonably could have been discovered by plaintiff. *State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr., Inc.*, 388 Fed. App'x 125, 129 n.4 (3d Cir. 2010). Here, the transfers alleged to fall under PUFTA allegedly began in or around December 2014. Ex. A at ¶ 17. Plaintiff was aware of these transfers by June 10, 2015 at the latest, when it filed the Texas Action. Ex. B at ¶ 33. Accordingly, the PUFTA statute of limitations has long since expired. *See Presidential Facility, LLC v. Campbell*, No. 14-7076, 2015 WL 1208261, at *3 (E.D. Pa. Mar. 16, 2015) (dismissing with prejudice fraudulent conveyance claim under PUFTA where conveyance was made in 2008 and suit was not brought until 2014). The four-year limitations period since the alleged act expired sometime in 2019, and the one year period following discovery expired even earlier. Plaintiff's fraudulent transfer claim under PUFTA is therefore time-barred and should be dismissed.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court (1) deny

Plaintiff's motion to remand and (2) dismiss the Complaint in its entirety.


                                        Respectfully submitted,

Date: May 22, 2020                      /s/ Frank P. DeGiulio
                                        Frank P. DeGiulio (PA 41577)
                                        PALMER BIEZUP & HENDERSON LLP
                                        190 N. Independence Mall West
                                        Suite 401
                                        Philadelphia, PA 19106
                                        (215) 625-9900
                                        fpd@pbh.com
                                        Attorneys for Defendants