IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ECLIPSE LIQUIDITY, INC. | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEDEN HOLDINGS LTD., *et al.* | : | No. 20-1847 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                        **July 1, 2020**

      Eclipse Liquidity, Inc. ("Eclipse") filed a lawsuit in the Philadelphia Court of Common Pleas against Geden Holdings, Ltd. ("Geden"), Advantage Tankers LLC, and Advantage Award Shipping LLC. According to that lawsuit, Geden is a judgment debtor of Eclipse, as a tribunal in London awarded Eclipse damages against Geden based on Geden's failure to purchase a boat. Eclipse turned to the courts in this Commonwealth to have the foreign judgment recognized in Pennsylvania, which currently it is. According to Eclipse, Geden has restructured its business to avoid satisfying that judgment. Specifically, Geden's obligation to satisfy the judgment now falls on Advantage Award Shipping, which owned the vessel, and Advantage Tankers, which owns 100% of the shares of Advantage Award Shipping.

      Defendants removed this case, arguing that the Court has maritime jurisdiction over the case. Eclipse now seeks to remand, arguing that this case does not fall within the Court's maritime jurisdiction. After the Court's review of the record, the ship has sailed. This case is not about a boat or the terms of a bareboat charter. It is about alleged corporate fraud and improper business restructuring. This case therefore does not fall within the Court's maritime jurisdiction and it will be remanded.

**I.       FACTUAL BACKGROUND**

      **A.       Eclipse's Complaint**

Eclipse is a judgment creditor of Geden in the amount of $3,479,152.69 (Compl. ¶ 10.) The judgement arises out of a performance guarantee of an obligation of one of Geden's subsidiaries, Avor Navigation, to buy the Motor Tanker AVOR from Eclipse. (*Id*. ¶ 11.)

Geden owned the Motor Tanker VALUE through one of its one-ship companies. (¶ 13.) On or about April 13, 2015, Plaintiff exercised a put option under its contract with Avor Navigation Ltd. requiring it to buy the AVOR. (*Id*. ¶ 15.) Avor Navigation refused to buy the vessel and Eclipse headed to arbitration in London. (*Id*.) Avor Navigation failed to honor the arbitration award and Eclipse "made due demand" on Geden for performance under its performance guarantee. (*Id*. ¶ 16.) Geden refused to honor the guarantee; Eclipse eventually obtained a judgment against Geden which has been recognized in Pennsylvania. (*Id*.)

Eclipse alleges that beginning in December of 2014, Geden transferred its eleven tankers to newly created one-ship companies. (*Id*. ¶ 17.) Specifically, as a result of the restructuring, the vessel VALUE was renamed ADVANTAGE AWARD and was transferred to Advantage Award Shipping, LLC, which is 100% held and controlled by Advantage Tankers, LLC. (*Id*. ¶¶ 18, 31.)

After the restructuring, the majority of the legal ownership in the vessels was transferred to the daughter of Mehmet Emin Karamehmet. (*Id*. ¶ 22.) The remaining interests in the ship was transferred to Ali Tugrul Tokgoz, who was the CEO of Geden and became CEO of Advantage Tankers. (*Id*. ¶ 22.) Thus, Tugrul Tokgoz was the President and CEO of Value Shipping Ltd., Geden, Advantage Award Shipping, and Advantage Tankers; Mehmet Mat was the CFO of those entities. (*Id*. ¶¶ 32-33.) "[I]n actual fact, the ultimate beneficial ownership of the corporate entities which owned the above mentioned 11 tanker vessels remained unchanged . . . and the ultimate

beneficial owner continued to be Mehmet Emin Karamehmet." (*Id.* ¶ 23.) Moreover, despite the restructuring, the operational, technical, commercial and administrative management of the vessels remained with Geden Lines. (*Id.* ¶ 28.) Plaintiff terms the restructuring "an extra-judicial private fraudulent bankruptcy disguised as an arm's length sale transaction to the detriment of non-lending creditors." (*Id.* ¶ 29.) Ultimately, Geden is responsible for the technical, commercial, crewing, and administrative management of the ADVANTAGE AWARD, just as it was prior to restructuring. (*Id.* ¶¶ 35, 37, 40.) Advantage Tankers carries on the business formally performed by Geden such that the two entities are indistinguishable. (*Id.* ¶ 46.)

Eclipse contends that Advantage Award Shipping Ltd. and Advantage Tankers are liable to it as successor companies of Geden. The whole purpose of the transaction was to render Geden judgment-proof. (*Id.* ¶ 48.) Notwithstanding the business restructuring, ownership and control of the vessels remained with the same individuals. (*Id.* ¶¶ 53-54.) Thus, "[a]t all times material hereto all of the obligations and liabilities incident to the ownership and operation of the 11 tankers that were formerly performed by Geden Holdings Ltd. have been taken over and are being performed by Advantage Tankers." (*Id.* ¶ 56.)

Plaintiff seeks to pierce the corporate veil of Advantage Tankers and Advantage Award LLC because those entities are merely a front for Geden. (Count II). Defendants seek to insulate these vessels from arrest and/or attachment in an effort to keep creditors from recouping their money. (*Id.* ¶ 69.) Plaintiff also charges that the transfer of assets from Geden to Advantage Award Shipping, LLC was fraudulent under the Pennsylvania Uniform Fraudulent Transfer Act.

B.     **The Underlying Judgment**

Without question, the parties have a hull of a history together. Eclipse bareboat-chartered the AVOR to Avor Navigation for a period of five years. Pursuant to their agreement, the parties

submitted disputes that had arisen at the end of the charter to an arbitration tribunal in London. The tribunal noted that the bareboat charter included a sale and purchase rider that provided the charterer an option to purchase the vessel for $54,550,000 and that upon proper notice of the exercise of the option, the owners of the vessel had to take all necessary steps to ensure transfer of ownership of the vessel to the charterers. (Mem. of Law in Supp. of Mot. to Remand to the Phila. Court of Common Pleas [Pl.'s Mem.] at 2-3.) If the charterers did not declare their purchase option in accordance with the agreement, the owners could sell the ship to the charterers for a price of $51,500,000 within thirty running days from the latest date of declaration of charterers option. (*Id.*)

The London tribunal awarded Eclipse $5,000,000 in damages arising out of the charterer's failure to purchase the vessel pursuant to the agreement. However, because the London tribunal concluded that the charterer suffered lost profits, the ultimate award to Eclipse was $3,882,154.90. Although part of this award was satisfied from funds attached in the hands of third parties, $2,991,842.40 remains unpaid. Pursuant to a performance guarantee, Eclipse demanded payment from Avor Navigation's parent corporation, Geden. Pursuant to an "Irrevocable Performance Guarantee", Geden "unconditionally and irrevocably guarantee[s] as primary obligor on first demand the full and timely performance by the Charterer [Avor Navigation Ltd.] of all its obligations under the Contract, including, but not limited to the punctual payment of the hire and or the purchase price of the vessel MT AVOR, providing the Charterer with sufficient funds to fulfill the Contract, due and punctual payment to you of all amounts (if any) owing by the Charterer under or pursuant to the Contract." (Mot. to Remand Ex. A [Irrevocable Performance Guarantee].)

Geden did not pay so Plaintiff sought to enforce the guarantee in London. On July 28, 2017, the High Court in London awarded Eclipse $3,311,159.06 in principal, interest, and costs. Geden

has not paid the judgment, so Eclipse has sailed the Atlantic in an effort to get its money. Geden was registered as a foreign corporation in Pennsylvania; Eclipse therefore sought to have the judgment recognized in Pennsylvania. To achieve this end, Eclipse headed to the Philadelphia County Court of Common Pleas. The judgment was recognized pursuant to the Pennsylvania Uniform Foreign Money Judgment Recognition Act. Geden filed a motion to strike, which was denied. Geden then appealed to the Pennsylvania Superior Court, but the Superior Court affirmed the decision to recognize the judgment against Geden. The judgment remains unsatisfied, which led Eclipse to sue Advantage Tankers and Advantage Award, claiming that these entities are mere shadows, created in an effort to avoid Geden's financial obligation to Eclipse.

On April 9, 2020, Defendants filed a notice of removal, invoking this Court's maritime jurisdiction, 28 U.S.C. § 1333(1). Eclipse filed a motion to remand for lack of subject matter jurisdiction, arguing (among other things) that this litigation does not fall within the Court's maritime jurisdiction. According to Eclipse, this case "is a suit for the enforcement of a non-admiralty court foreign judgment, over a non-maritime claim for the sale of a vessel, which was recognized in Pennsylvania under the state's Uniform Foreign Money Judgment Recognition Act." (Pl.'s Mem. at 1.)

## II. DISCUSSION

### A. Motion to Remand

Geden removed this litigation to this Court, arguing that the Court's maritime jurisdiction grants this Court original jurisdiction over this litigation. Eclipse claims that we are off course and that this litigation should be moored in state court, where it originally set sail. The Court will remand this litigation.

Eclipse argues that its claim is not a maritime claim because Geden's guarantee of the non-maritime obligation to purchase a vessel is not a maritime obligation. (Pl.'s Mem. at 5-7.) According to Eclipse, courts have consistently ruled that "contracts for the sale and purchase of vessels are not maritime and are not enforceable in admiralty." (*Id*. at 7.) Defendants, to the contrary, contend that "[t]his case is within the maritime jurisdiction because the underlying contract is a quintessential maritime contract: the bareboat charter of an oceangoing vessel." (Mem. of Law in Opp'n to Pl.'s Mot. to Remand and in Supp. of Defs.' Cross-mot. to Dismiss [Defs.' Opp'n] at 4.) From Defendants' vantage, this is a classic maritime contract that included a purchase option; the contract between the parties was not merely a financing agreement. Therefore, Geden's guarantee was more than a guarantee to purchase a vessel. (*See id*. at 7 ("Because the underlying contract is maritime, the performance guarantee by Geden is likewise maritime.").)

This Court has original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Although district courts have jurisdiction over maritime contracts, there is no definition of what constitutes a maritime contract. *d'Amico Dry Ltd. v. Primea Maritime (Hellas) Ltd.*, 886 F.3d 216, 223 (2d Cir. 2018). Thus, courts take a case-by-case approach and look to the nature and character of the contract and whether the contract's principal purpose is maritime commerce. *Norfolk S. Ry. Co. v. Kirby*, 524 U.S. 14, 24-25 (2004) (noting that whether a contract is maritime depends upon the nature and character of the contract and whether it references maritime service or transactions).

The Court concludes that the contract here is not maritime, and therefore this case does not fall within this Court's maritime jurisdiction. A contract to buy and sell a vessel is not a maritime contract. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 804 (9th Cir. 2001)

("[A] suit arising out of the sale of a vessel does not give rise to admiralty jurisdiction."). A breach of contract for the sale of a boat does not a maritime dispute make. *See Vrita Marine Co. v. Seagulf Trading LLC*, 572 F. Supp. 2d 411, 412 (S.D.N.Y. 2008). The Third Circuit Court of Appeals has not directly addressed this question, but the principle that district courts lack maritime jurisdiction over claims arising out of the sale of A vessel has been applied in this circuit. *See Gerard Constr., Inc. v. Motor Vessel Va.*, 480 F. Supp. 488, 489 (W.D. Pa. 1979) (citing cases).

The underlying dispute considered by the tribunal involved the purchase of a boat. The interpretation of the contract focused on the purchase of the vessel and it does not appear that any additional contract interpretation was required. Because the underlying contract to buy the vessel was not maritime in nature, the guarantee of that obligation is also not maritime in nature. *See Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 917 (S.D. Tex. 2013) ("Because the underlying transaction itself is a non-maritime vessel sale/financing, Geden's guarantee of Amazing Shipping's obligations under the relevant agreements is similarly non-maritime in nature.").

Furthermore, the Court believes that there is an additional reason this litigation does not fall within the Court's maritime jurisdiction. This is not a maritime dispute; it is an attempt to have a judgment that has been recognized in this Commonwealth paid by the alleged successor to the company against which the judgment was entered. This case is about whether companies improperly shielded their assets from a judgment issued by a foreign tribunal and whether the Plaintiff is going to be able to recover on a judgment now recognized in this Commonwealth. This litigation is not about maritime commerce. Rather, it is concerned with corporate fraud, business restructuring, and whether a company must abide by a validly recognized judgment. The underlying contract that formed the basis for those issues has already been litigated and thus has

little to no bearing on this litigation. The parties are past litigating if the vessel had to be purchased or even if the guarantee is valid. Which entity or entities must pay a judgment is the concern of this litigation. And that has nothing to do with any maritime contract.

Finally, Defendants also note that Plaintiff filed a complaint in the Southern District of Texas in 2015 with "nearly identical allegations" that invoked the district court's maritime jurisdiction based on the alleged breach of a bareboat charter. (Defs.' Opp'n at 3-4.) Defendants point out that the complaint sought to pierce Geden's corporate veil and that the complaint was ultimately dismissed. (*Id*. at 4.)

This previous filing does not alter the Court's analysis. In the Texas complaint, the plaintiff contended that the defendants failed to pay a bareboat charter hire that had been duly invoiced by Eclipse. (Mem. of Law Opposing Defs.' Cross-Mot. to Dismiss & Removal Ex. 1 [Tx. Compl.].) Maritime jurisdiction was appropriate there because, unlike this case, the underlying agreement was central to that case and the sale of a vessel was not at issue. This litigation is readily distinguishable, and therefore it has no bearing on whether this case falls within the Court's maritime jurisdiction.

### B.      Motion for Sanctions

Eclipse has moved for sanctions under both Rule 11 and 28 U.S.C. § 1447(c). The Court declines to award costs, sanctions, or attorneys' fees.

The removal statute provides that a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). Courts have broad discretion when faced with a motion for costs under this statute. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). Bad faith, however, is not a prerequisite to an award of costs. *Portside Invs., L.P. v. N. Ins. Co. of N.Y.*, 253 F. Supp. 2d 835, 837 (E.D. Pa.

8

2003). Costs may be awarded if the defendant lacked a "colorable basis" for removal or if removal was "if not frivolous, at best insubstantial." *Mints*, 99 F.3d at 1261.

Although Defendants have fallen short of meeting their burden that jurisdiction exists, this case is not appropriate for a fee award. This case does not belong in federal court, but Defendants have at least raised a colorable basis for the removal. Cases make clear that it is often difficult to discern the contours of maritime jurisdiction. Therefore, costs are not warranted under the removal statute. And if costs are not warranted under that statute, this is certainly not a Rule 11 issue, which is a more difficult standard to meet. Eclipse will just have to be satisfied returning to state court.

## III. CONCLUSION

Although the parties relationship might have at one point involved a boat, this litigation is about collecting on a foreign judgment. The underlying dispute upon which the judgment was rendered involved a contract to purchase a vessel, which is non-maritime in nature. Additionally, this case is about corporate restructuring and piercing the corporate veil. This litigation does not fall within the maritime jurisdiction of the Court. Therefore, Eclipse's motion to remand will be granted. An Order consistent with this Memorandum will be docketed separately.